**SO ORDERED.**

**SIGNED this 15 day of May, 2020.**

_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| **LARRY S. FORD** | **Case No. 19-05795-5-JNC** |
| **CRYSTAL A. FORD** | **Chapter 13** |
| **Debtors** | |

## ORDER DENYING OBJECTION TO CLAIM

The matter before the court is the Objection to Claim (No. 3) of the Internal Revenue Service ("IRS") filed by debtors Larry S. Ford and Crystal A. Ford (the "Debtors") on January 21, 2020 (Dkt. 13; the "Objection"). A response in opposition was filed by the IRS on February 2, 2020 (Dkt. 19; the "Response"). A hearing was held on April 1, 2020. Participating in it were attorneys Allen C. Brown for the Debtors and Dennis M. Duffy for the IRS.

### FACTS

The material facts are undisputed. The Debtors filed an initial petition under chapter 13 of the Bankruptcy Code on November 5, 2014, No. 14-06444-5-JNC ("Case #1") and a chapter 13 in it was confirmed in Case #1 on June 9, 2015 (No. 14-06444-5-JNC; Dkt. 27). Payments were missed and Case #1 was converted to chapter 7 on July 11, 2016 (No. 14-06444-5-JNC; Dkt. 51). In the interim, on November 23, 2015 (the "Assessment Date"), the IRS assessed an unpaid income tax claim against the Debtors for the period ending December 31, 2014 (the "2014 Tax").

1

The Debtors received a chapter 7 discharge in Case #1 on January 26, 2017 (the "Discharge Date"). The 2014 Tax was not paid in Case # 1 and the parties stipulate that it as a post-petition debt excluded from the Case #1 discharge. The Debtors filed their second and present chapter 13 case ("Case #2") on December 18, 2019, less than three years (1056 days) after the Discharge Date and more than three years (1485 days excluding leap day) after the Assessment Date.

The IRS filed Proof of Claim No. 3 (the "Proof of Claim") on January 6, 2020 in the amount of $24,184.70, comprised of an unsecured priority claim of $19,791.48 and an unsecured general claim of $4,393.22. The claim includes tax liabilities of the Debtors for tax years 2014, 2016, and 2017. The Debtors objected to the Proof of Claim, contending that the 2014 Tax debt[1] should be treated as a general unsecured claim under § 507(a)(8)(A)(i) since it became due when assessed on November 23, 2015, more than three years prior to the filing of Case #2. In response, the IRS argues that because its ability to collect the 2014 Tax debt was stayed during the pendency of Case #1, the intervening 430 days between the Assessment Date and the Discharge Date does not enter into the three-year calculation. If correct, the resulting 1055-day period is less than three years (1095 days) and the 2014 Tax would be entitled to priority treatment under § 507(a)(8)(A)(i).

## LAW AND ANALYSIS

**A. Debtors' eligibility for discharge.**

Although the issue has not been raised by either party, this court must first address this case in light of 11 U.S.C. § 1328(f). Section 1328 of the Bankruptcy Code addresses eligibility for discharge in a subsequent chapter 13 case. Its subsection (f) was added to the Bankruptcy Code in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The new

---

[1] The 2014 tax debt claim is asserted as $10,065.93, plus accumulated penalties and interest.

2

subsection (f) addresses time restrictions in cases where a debtor has recently filed a petition under Title 11 and received a discharge, as is the case here, stating:

> (f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502 [11 USCS § 502], if the debtor has received a discharge—
> (1) in a case filed under chapter 7, 11, or 12 of this title [11 USCS §§ 701 et seq., 1101 et seq., or 1201 et seq.] during the 4-year period preceding the date of the order for relief under this chapter [11 USCS §§ 1301 et seq.], or
> (2) in a case filed under chapter 13 of this title [11 USCS §§ 1301 et seq.] during the 2-year period preceding the date of such order.

11 U.S.C. § 1328(f).

Subsection (f) is clear in some respects but ambiguous in others. Most apparent is that debtors receiving a discharge in a prior chapter 7 case are eligible to receive a discharge in a subsequently filed chapter 13 case only after four years have passed since the filing of the initial chapter 7 case. Similarly, debtors who received a discharge in a prior chapter 13 case are eligible to receive a chapter 13 discharge in a subsequently filed chapter 13 case if two years have elapsed since the filing of the first case. However, the statute does not directly address the question of discharge eligibility when, as is the case here, a debtor files a chapter 13 petition, converts that case to chapter 7, receives a chapter 7 discharge, and subsequently files another chapter 13 case.[2]

Two interpretations are possible. The first is a literal reading of § 1328(f)(2), where it appears that the chapter under which a case is filed, not the chapter under which the discharged is granted, controls the right to a discharge in the latter case. The second is the so-called "plain

---

[2] The relevant dates guiding analysis are:
November 5, 2014 - Debtors file Case #1 under chapter 13 (No. 14-06444-5-JNC);
July 11, 2016 - Case #1 converted from chapter 13 to a case under chapter 7;
January 26, 2017 - Debtors receive a discharge in Case #1; and
December 18, 2019 - Debtors file the chapter 13 Case #2 (No. 19-05795-5-JNC).

3

meaning" analysis of §1328(f), which requires that subsection (f) be read in conjunction with § 348(a). That section contemplates the effects of conversion, stating:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

The majority of cases reviewing this issue since the enactment of BAPCPA support a reading that the discharge dates referenced in § 1328(f)(1) pertain to the chapter under which the discharge was entered rather than the case initiating chapter. Applying a literal interpretation of § 1328(f) would ignore § 348 of the Bankruptcy Code and lead to a contrary result.

Instructive on this point is the analysis contained in *McDow v. Capers (In re Capers)*, 347 B.R. 169, 172 (Bankr. D. S.C. 2006). There, the debtor contended that the two year prohibition on receiving a discharge under § 1328(f)(2) rather than the four year prohibition under § 1328(f)(1), was applicable to her new chapter 13 case because the first case was "filed" under chapter 13 and then converted to chapter 7. *Id*. The court rejected this purely mechanical recitation, holding that § 348(a) intervenes to require that conversion changes the chapter that it is deemed filed under. *Id. See also In re Knighton*, 355 B.R. 922, 926 (Bankr. M.D. Ga. 2006) ("[C]onverting a case from chapter 13 to chapter 7 causes the case to be one that is filed under chapter 7 on the same date the chapter 13 petition was filed."); and *In re Davis*, 489 B.R. 478, 481 (Bank. S.D. Ga. 2013). The *Capers* court reasoned that a reading of § 1328(f)cannot be read alone and must be consistent with § 348(a), under which a converted case is deemed to have been filed at the time the bankruptcy case was initially filed and before it was converted. *Id*. at 171-172. *See also Resendez v. Lindquist*, 691 F.2d 397 (8th Cir. 1982) (holding that conversion from chapter 13 to chapter 7, under 11 U.S.C.

4

§ 348(a) debtors are deemed to have filed under the converted chapter as of the time the original case was filed). The result, the court found, is consistent with the legislative history of § 1328(f). A mechanical reading made in a vacuum "would frustrate the policy that Congress sought to implement through the provisions of that section." *Id.* at 172.

*McDow v. Sours (In re Sours)*, 350 B.R. 261 (Bankr. E.D. Va. 2006), reached the same conclusion. In that case, the debtors filed a chapter 13 case that was later converted to chapter 7, where they received a discharge. *Id*. In the subsequent case, the debtors were denied a second discharge under § 1328(f) because, pursuant to § 348(a), they were deemed to have filed the prior chapter 7 case as of the date of the original chapter 13. *Id*. at 266. "Words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id*. The court further stated, "Legislative history indicates that the purpose of § 1328(f) was to extend the time periods within which a debtor could receive a subsequent discharge, not to inadvertently create an avenue of avoidance for clever debtors." *Id*. at 268. Consequently, the *Sours* second chapter 13 case was not filed more than four years after filing of the prior case. *Id*. at 269.

Accepting the persuasive reasoning of the *Capers* and *Sours* courts, the 4-year waiting period contained in § 1328(f)(1) applies to the present case. Here, the Debtors received their discharge in Case #1 under chapter 7 of the Bankruptcy Code. The fact that they initially filed Case #1 under chapter 13 is irrelevant. Accordingly, the original filing date on November 5, 2014 is the petition date controlling eligibility for discharge, not the conversion date. Because the Debtors filed Case #2 more than four years after Case #1, a discharge in Case #2 is possible.

### B. Priority of 2014 Tax Claim

Section 507 of the Bankruptcy Code identifies certain unsecured claims that receive priority status in bankruptcy. One such claim is an income tax claim "for a taxable year ending on

or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i). The time period accruing after the filing of the petition is referred to as the three-year "lookback" period. Unpaid priority tax claims included in the three-year lookback period are generally excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(A). In a chapter 13 case, priority taxes must be paid in full. Thus, whether the tax claim at issue qualifies for priority status is vital in determining the treatment of tax claims under the chapter 13 plan in Case #2 and the ability of the IRS to pursue collection of the balance of the tax liability.

*Young v. United States*, 535 U.S. 43 (2002) involved debtors who filed a chapter 13 bankruptcy petition, moved to dismiss that proceeding, and filed a new chapter 7 petition the day before the chapter 13 case was dismissed but after the three-year lookback period would otherwise have expired. *Id.* at 45. In *Young*, the Supreme Court applied the principles of equitable tolling and held the three-year lookback period of § 507(a)(8)(i) is tolled "during the pendency of a prior bankruptcy petition." *Id* at 54. The three-year lookback period was interpreted as a limitations time subject to traditional principles of equitable tolling because it prescribes a period within which certain rights may be enforced.[3] *Id.* at 47. The Court noted that "nothing in the Bankruptcy Code precludes equitable tolling of the lookback period[.]" *Id.* Moreover, it recognized the foundational principle of law that "limitations periods are 'customarily subject to "equitable tolling . . . " unless tolling would be 'inconsistent with the text of the relevant statute." *Id.* at 49 (citing *United States v. Beggerly*, 524 U.S. 38, 48 (1998) (citation omitted)). The Supreme Court maintained that

---

[3] The Court found that the lookback period of § 507(a)(8)(A) was a limitations period because it prescribed a period within which certain rights, namely, priority and non dischargeability in bankruptcy, could be enforced and it served the same basic policies furthered by all limitations provisions (repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.) *Young*, 535 U.S. at 47 (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000).

6

Congress must be presumed to draft limitation periods knowing that bankruptcy courts are courts of equity and will apply the principles and rules of equity and jurisprudence. *Id.* at 50-51 (citing *Pepper v. Litton*, 308 U.S. 295, 304 (1939)).

While the Bankruptcy Code does not contain an explicit provision suspending the priority period of § 507(a)(8)(A)(i) while a debtor is engaged in a bankruptcy proceedings and the automatic stay is in effect, courts invoke § 108(c) and § 105(a) to toll the lookback period for purpose of § 523(a)(1)(A). *See In re Putnam*, 503 B.R. 656, 661 n.2 (Bankr. E.D.N.C. 2014) (citing *Hollowell v. IRS (In re Hollowell)*, 222 B.R. 790, 793 (Bankr. N.D. Miss. 1988) ("[T]here are numerous published opinions addressing the issue of whether the three-year period of § 507(a)(8)(A)(i) is tolled by filing the prior bankruptcy case. Most of these decisions have held that the limitations period is tolled . . . . Some of the decisions relied on § 108(c)[4] to toll the running of the three-year period. Others looked to the equitable power conveyed to the court pursuant to § 105(a) as authority for tolling."); *see also Kaiser v. United States (In re Kaiser)*, 242 B.R. 643, 647 (Bankr. N.D. Oh. 1999) (holding debtors' income taxes were nondischargeable, since the provision for extension of time in § 108(c) tolls the three-year lookback period of § 507(a)(8)(A)(i) during pendency of debtor's prior bankruptcy cases).

---

[4] Which states:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of --

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c).

Other courts have relied on section 105(a)[5] to reach the same conclusion. *See Morgan v. United States (In re Morgan)*, 182 F.3d 775, 779 (11th Cir. 1999) ("[W]e conclude that 11 U.S.C. § 105(a) is broad enough to permit the Bankruptcy Court, exercising its equitable powers, to toll three-year priority period, where appropriate, during pendency of debtor's priory bankruptcy proceeding.").

Under Section 6501 of the Tax Code, the IRS is given three years after a return is filed to assess liability, and pursuant to § 6502, ten years after assessment to collect on the debt. 26 U.S.C. §§ 6501-6502. The ability to extend these periods during the pendency of a bankruptcy proceeding pursuant to § 108(c) of the Bankruptcy Code is further supported by § 6503, which provides:

> (b) Assets of taxpayer in control or custody of court. – The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States . . . and for 6 months thereafter. . . .
>
> (h) Cases under Title 11 of the United States Code – The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under Title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting . . . .

26 U.S.C. § 6503.

The amalgamation of §§105(a) and 108(c) of the Bankruptcy Code with § 6503 of the Tax Code demonstrates an intent on the part of Congress not to allow a taxpayer to escape liability by lurking within a bankruptcy proceeding until the statute of limitations expires and then cavalierly

---

[5] Which states:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a)

dismissing the case. *See Lichter v. IRS (In re Lichter),* 1999 Bankr. LEXIS 1904 (Bank. D. Md. 1999) (holding that Congress intended § 108(c) and § 6503(b) and (h) to toll the three-year priority period of § 507(a)(8)(A)(i); because the automatic stay prevented the IRS from collecting the tax debt from July 1, 1988 until February 6, 1991, the three-year priority period of § 507(a)(8)(A)(i) was suspended during that time); *see also Abir v. United States (In re Abir),* 2010 Bankr. LEXIS 377 (Bankr. E.D.N.Y. Feb. 1, 2010) (holding chapter 7 debtors' federal income tax liabilities for 2000 to 2004 tax years were excepted from discharge under §§ 523(a)(1) and 507(a)(8)(A)(i) because the IRS had been continuously stayed from any collection action, thus tolling of the three-year look-back period was appropriate).

The Supreme Court in *Young* also took notice of public policy concerns in tolling the three-year period of §§ 523(a)(1)(A) and 507(a)(8)(A)(i), stating:

> The terms of the lookback period appear to create a loophole: Since the Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings . . . a debtor can render a tax debt dischargeable by first filing a Chapter 13 petition, then voluntarily dismissing the petition when the lookback period for the debt has lapsed, and finally refiling under Chapter 7. During the pendency of the Chapter 13 petition, the automatic stay of § 362(a) will prevent the IRS from taking steps to collect the unpaid taxes, and if the Chapter 7 petition is filed after the lookback period has expired, the taxes remaining due will be dischargeable. Petitioners took advantage of this loophole, which, they believe, is permitted by the Bankruptcy Code. We disagree. . . .

*Young*, 535 U.S. at 47 (citations omitted).

In 2005, as part of BACPA, Congress amended the Bankruptcy Code to address issues raised in *Young*. An unnumbered paragraph was tacked on the end of § 507(a)(8)(G), which provides:

> An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal from any collection action taken or proposed against the

9

>debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

11 U.S.C. § 507(a)(8)(G).

Congress amended § 507(a)(8) in order to achieve a balance between three competing interests, specifically those of "(1) general creditors, who should not have funds available for payments of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose 'fresh start' should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting." *Waugh v. IRS (In re Waugh)*, 109 F.3d 489, 492 (8th Cir. 1997). Moreover, "In accord with the holding in *Young*, the unnumbered paragraph expressly provides for tolling of the lookback period" and "adds 90 days to the suspension period." *In re Spinks*, 591 B.R. 113 (Bankr. S.D. Ga. 2018) (quoting *In re Montgomery*, 446 B.R. 475 (Bankr. D. Kan. 2011).

This court has previously interpreted the tolling language added to the end of § 507(a)(8)(g) to supplement rather than displace existing principles of equitable tolling. *In re Putnam*, 503 B.R. at 665. In *Putnam*, this court logically extended the Supreme Court's holding in *Young* by observing that the two year look-back period in § 523(a)(1)(B)(ii) is similarly subject to equitable tolling under §§ 105(a) and 108(c) because it is an indistinguishable limitations period from the period in §§ 523(a)(1)(A) and 507(a)(8)(A)(i). *Id.* at 661. The *Putnam* debtor argued that the plain language of § 523(a)(1)(B)(ii) controls because the Bankruptcy Code does not contain specific tolling language. *Id.* at 658. He further argued that when Congress codified the holding in *Young*, it intentionally did so on a limited basis by not including a tolling provision in § 523(a)(1)(B)(ii). Absent specific language, he argued, equitable tolling could not be applied. *Id.* at 665.

The court disagreed in *Putnam* and continues to disagree now. The cited amendment does not overrule *Young*. If anything, the codification change emphasizes that as a matter of policy Congress approved the decision in *Young* by increasing the circumstances of tolling to enable the IRS to collect tax debts:

> To hold otherwise would allow a taxpayer to discharge liability from an untimely tax return by invoking the protection of the Bankruptcy Courts until the two-year lookback period had expired. For the same reasons identified in Young, equitable tolling of the two-year lookback period found in § 523(a)(1)(B)(ii) is appropriate during those periods of a bankruptcy proceeding in which the IRS is prevented by the automatic stay from collecting on the debt.

*Id.* at 666.

Other courts have adopted a different reading of § 507(a)(8) following the post-*Young* amendment. *See, e.g.*, *Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 510 (B.A.P. 9th Cir. 2009), *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011); *Kolve v. IRS (In re Kolve)*, 459 B.R. 376, 378 (Bankr. W.D. Wis. 2011); and *Clothier v. IRS (In re Clothier)*, 588 B.R. 28 (Bank. W.D. Tenn. 2018).

In *Clothier,* the debtors owed income taxes for the years 2008 and 2009, and the deadline for filing those returns was extended to 2009 and 2010 respectively. *Id.* at 30. The debtors filed a chapter 11 petition in 2012, which was dismissed in 2013. *Id.* They subsequently filed a chapter 7 petition in 2013 and received a general discharge of debts. *Id.* at 29. The IRS, relying on *Young*, contended that the three-year-lookback period had not expired when the debtors filed their joint chapter 7 case on September 4, 2013, because it was tolled during the pendency of the earlier chapter 11 case from January 19, 2012 until June 5, 2013. If correct, the three-year-lookback period would not have run as of the chapter 7 case filing date and the tax debt therefore would survive the chapter 7 discharge. The *Clothier* court disagreed, reasoning that when *Young* was decided, § 507(a)(8)(A)(ii)(II) did not exist and no subsection of § 507(a)(8)(A) contained a tolling provision.

11

*Id*. at 31. Because Congress was presumably aware of the holding in *Young* yet only added a tolling provision for subsection (ii). Therefore, the *Clothier* court reasoned, it must assume that Congress's omission of a tolling provision for § 507(a)(8)(A) (i) and (iii) was intentional, meaning that Congress sought to overrule the *Young* decision. *Id.* at 31-32. The *Clothier* court ruled that those subsections were not tolled. *Id*.

This court respectfully disagrees with the *Clothier* decision. While there are many instances where Congress has overruled the Supreme Court, this is not one of them. No legislative history or other direct evidence exists only indirect suppositions and inferences, supporting a proposition that by adding a tolling provision to § 507(a)(8)(A)(ii) but not to subsections (i) or (iii) Congress intended to overrule *Young*. If anything, the BACPA changes extend rather than overrule tolling. As the Supreme Court in *U.S. v. Ron Pair*, 489 U.S. 235 (1989), noted, the grammatical structure of a statute where the relevant phrase was set aside by commas results in the phrase . . . stand[ing] independent of the language that follows." *Ron Pair*, 489 U.S. at 241. Similarly, here, the phrase "plus 90 days" is separated from the preceding clause by a comma, thereby standing independent of the preceding language. The punctuation of the phrase "plus 90 days" indicates that it should be added to the three-year lookback period after subtracting the period when the bankruptcy stay was in effect by a prior bankruptcy case. The final clause in the hanging paragraph of § 507(a)(8)(g) is applicable to § 507(a)(8)(A)(i).

## CONCLUSION

The court in this instance agrees with the IRS here that the traditional principles of equitable tolling must be applied to the three-year lookback period of § 507(a)(8)(A)(i). The Debtor's filed their petition in Case #1 on November 5, 2014. The Debtor's tax was not assessed until November 23, 2015. As a result of the automatic stay, the IRS was precluded from pursuing

collection actions against property of the Debtor's bankruptcy estate for a total of 430 days, until January 26, 2017, the date the Debtor's received their Discharge. *See* 11 U.S.C. §§ 362(a)(3), 362(a)(4). The automatic stay of § 362(a) in Case #1 ceased to exist upon the date of Discharge. 11 U.S.C. § 362(c)(2)(C). Between the date of Discharge and the petition date for Case #2, a total of 1055 days elapsed, which is less than three years. The IRS was stayed from collecting the 2014 Tax debt for 430 days, plus 90 days pursuant to §§ 507(a)(8)(A)(i) and the hanging paragraph at the end of 507(a)(8)(g), for a total of 520 days. Thus, the three-year lookback period of § 507(a)(8)(A)(i) was tolled for 520 days. The 2014 Tax debt is a priority claim.

Finally, the holding is in line with public policy. To rule otherwise would essentially allow a taxpayer to discharge tax liability by invoking the bankruptcy protection until the three-year lookback period has expired and then taking a dismissal. For the same reasons identified in *Young*, equitable tolling of the three-year lookback period in this matter is appropriate during all periods of a bankruptcy proceeding in which the IRS is prevented by the automatic stay from collecting the tax debt. A debtor cannot be rewarded by gaming the Bankruptcy Code to restrain collection activity while the clock runs out on the tax collector.

For the foregoing reasons, the Objection is **DENIED.** The Proof of Claim by the IRS in this case is **ALLOWED**.

**END OF DOCUMENT**